

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable. Ben J. Dean
District Attorney
Breckenridge, Texas

Dear Sir:

Opinion Number O-1780
Re: Eligibility of certain
bonds of Stephens County to
participate under the terms
of H. B. #688, passed by the
Forty-sixth Legislature,
Regular Session, 1939

We are in receipt of your letter of December 15, in which you request our opinion upon two questions, which are -

1. Are said three bonds so purchased by Stephens County eligible to participate under the terms of the above described Act and the amendment thereof?

2. Is Stephens County entitled to credit for these bonds to the extent of raising the percentage of the State's participation in the payment of that series of road bonds in proportion as said three bonds may bear to the balance of the unpaid bonds assumed by the State unpaid, or in any other proportion?

Briefly, the facts underlying your questions are as follows:

Stephens County has certain road bonds outstanding besides their Series A bonds, payable serially, the proceeds of which bonds were expended in constructing hard-surfaced roads which are now and have been for many years constituting a part of the State Highway System of Texas, and as such have been maintained by the State of Texas as a part of its designated State Highway System. These bonds were on and after

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

January 1, 1933, eligible to participate under the provisions
of Chapter 13, page 15, Acts of the Third Called Session of
the Forty-second Legislature, as amended.

On February 26, 1924, prior to the enactment of the
above mentioned law, Stephens County, from the interest and
sinking funds of Series A bonds on hand, purchased three Series
A Road Bonds, Numbers 491, 492 and 493, which bonds were not
due and payable until February 15, 1942.

No order of the Commissioners' Court of Stephens County
has ever been made or entered cancelling said three road bonds.

The Board of County and District Road Indebtedness has
refused to give Stephens County credit for the above three named
bonds or any part thereof, basing their refusal on the opinion
of the Attorney General's office of date January 18, 1937. We
have reconsidered the opinion of the Attorney General's Depart-
ment, dated January 18, 1937, addressed to Mr. W. H. Gordon,
Chief Accountant, Board of County and District Road Indebted-
ness, Austin, Texas, written by the Honorable Victor W. Bouldin,
Assistant Attorney General, and have concluded to agree with the
principle announced therein. We think it immaterial that your
bonds are serial bonds, as distinguished from the term bonds
under consideration in that opinion; likewise, we think the
optional feature contained in said bonds has no bearing on the
proper answer to this question.

We are constrained to adopt the conclusions reached in
that opinion irrespective of its failure to cite authorities.
As a matter of law we conclude that the three bonds purchased
with Series A sinking fund money were paid off and discharged
and no longer existed on January 1, 1933. The question as to
whether or not the bonds so purchased have been discharged ap-
pears to us to be academic. Said bonds were bought with funds
accumulated for that very purpose and when said money has been
used to purchase said bonds, we think the interests have merged.
In the case of Smith vs. Cooley, 164 S. W. 1050, the court said:

"The possession by the maker of a note is prima
facie evidence that said note has been paid."

This pronouncement by the court was in line with earlier authorities. See case of Kneeland vs. Miles, 24 S. W. 1113 and Stephens vs. Moodie, 30 S. W. 490. Further, in the case of Close vs. Steel, 2 Tex. Rep. 237 and 13 Tex. Rep. 625, the court said:

"The delivery of a note by the owner to the maker, with intent to discharge the debt, discharges the debt."

Article 5939, Revised Civil Statutes of 1925, provides that a negotiable instrument is discharged "when the principal debtor becomes the holder of the instrument at or after maturity in his own right." We think there can be no argument but that the instrument itself, which merely evidences the obligation, becomes ineffectual under such circumstances. Such, we believe, is the meaning of this statute. However, if the principal debtor should come into possession of the instrument at or after maturity through fraud, we do not think this statute could effectively discharge the obligation which said instrument evidenced. Judging from the statement of facts set forth in your letter, we conclude that there was no fraud practiced by the county in obtaining these bonds, but rather, on the other hand, the county deliberately purchased said bonds prior to maturity with funds accumulated for the purpose of retiring that debt, and we believe it was the purpose of the owner of the bonds at the time of delivery to the county to discharge the county from its obligations. Accordingly, it is our opinion that said bonds were automatically cancelled by said purchase, and therefore do not come within the purview of Section 6, Subsection (a) of House Bill #688, which reads, in part, as follows:

"All bonds or other evidences of indebtedness heretofore issued by counties or defined road districts of this State, which mature on or after January 1, 1933 * * * "

It must be admitted that the face of the bonds so purchased and cancelled provided for a maturity date subsequent to January 1, 1933, but in view of the language used in Subsection (a ), Section 6 of said Act, which reads as follows:

"Whether said indebtedness is now evidenced by the obligations originally issued or by re-funding obligations or both * * *"

it seems clear that the Legislature intended that only such indebtedness as was outstanding as of January 1, 1933, would be eligible to participate in the moneys allocated to the Board of County and District Road Indebtedness. Accordingly, we must answer question number one in the negative.

Having answered your first question in the negative, we deem it unnecessary to answer question number two.

Trusting that the foregoing satisfactorily answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Clarence El Crowe
Assistant

CEC-s

APPROVED FEB 10 1940

ATTORNEY GENERAL OF TEXAS